STATE OF NORTH CAROLINA v. RONALD GOODEN

No. 835SC514

(Filed 20 December 1983)

**Automobiles and Other Vehicles § 113.2— negligence in parking on highway — insufficient evidence of involuntary manslaughter**

> While the evidence was sufficient to raise an inference that defendant was negligent in violating statutes pertaining to parking or leaving standing a vehicle upon the paved portion of the highway and warning signals and lights for such vehicles and that such negligence was a proximate cause of the deaths of three passengers in an automobile which struck defendant's truck, the evidence was insufficient to permit an inference that the acts or omissions of defendant constituted a willful, wanton or intentional violation of the statutes or a heedless or thoughtless indifference to the safety of others so as to support conviction of defendant for involuntary manslaughter. G.S. 20-129(a) and (d); G.S. 20-134; G.S. 20-161(a), (b) and (c).

APPEAL by defendant from *Barefoot, Judge.* Judgments entered 19 November 1982 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 8 December 1983.

Defendant was charged, tried, and convicted in three cases of involuntary manslaughter arising out of the deaths of Serena Bowden Merritt, Emily Merritt, and Martha J. Merritt. Defendant was also charged with, tried, and convicted of operating a motor

vehicle in violation of a limited driving privilege under N.C. Gen. Stat. Sec. 20-28(a).

The evidence offered at trial tends to show the following: On 7 August 1982 at approximately 10:00 p.m. the defendant was operating a 1971 Chevrolet flatbed truck, owned by his employer, in a southerly direction along Highway 132 in New Hanover County. Highway 132 is a four lane highway that is bounded on each side by a four foot paved shoulder. The body of the truck was approximately fourteen feet long and seven feet, eleven and one-half inches wide. After running out of gas, the vehicle came to rest with five feet, eleven inches of its frame in the highway's right lane, and two feet, one-half inch of the frame on the paved shoulder. The highway at the point of collision was generally straight and level. The weather conditions were "clear," but it was "unusually dark" on that occasion. The highway surface was dry.

After the truck ran out of gas, the defendant left the vehicle to get gas. Witnesses for the State testified that no taillights were visible on the truck. Defendant failed to place warning signals or flares at the back of his truck.

The other vehicle involved in the accident was a station wagon driven by Mr. Justin Merritt. Mr. Merritt testified that on the evening in question he was traveling with his family in a southerly direction in the right lane of Highway 132. He was traveling at approximately 55 miles per hour, and his headlights were on low beam. The disabled truck was invisible until it was "right in front" of Mr. Merritt. Mr. Merritt "jerked the [steering] wheel as hard as [he] could to the left" but was unable to avoid crashing into the truck. As a result of the accident three members of Mr. Merritt's family were killed.

The evidence offered by the defendant tends to show that he went to get gas, leaving behind a passenger to "direct the traffic." The passenger testified that he stood at the back of the truck "telling people to go around," and that eight or nine vehicles did so, but that after one car "almost hit" him, he got into the truck "to try and find something to help [him] direct traffic." While the passenger was in the truck the accident occurred. This passenger also testified that he observed lights on the back

of the truck. The State's evidence tended to show that no one was observed near the truck attempting to "direct the traffic."

The evidence further showed that defendant's driver's license had been revoked, and that he was driving pursuant to a limited privilege, one of the conditions of which was that he not operate a motor vehicle within three days after consuming any alcoholic beverage. After the accident defendant was given a breathalyzer test on which he blew a .04 percent.

The jury found defendant guilty of three charges of involuntary manslaughter and one charge of operating a motor vehicle in violation of a limited driving privilege. The court imposed a prison sentence of three years on the count charging defendant with the involuntary manslaughter of Serena B. Merritt; on the count charging involuntary manslaughter of Emily Merritt, the court entered a judgment imposing a prison sentence of three years to run consecutively with the sentence imposed in the death of Serena B. Merritt; with respect to the case charging involuntary manslaughter of Martha J. Merritt and the case of operating a motor vehicle in violation of a limited driving privilege, the court entered a judgment imposing a prison sentence of three years, to run concurrently with that sentence imposed in the case involving the death of Emily Merritt. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General G. Criston Windham, for the State.*

*Fullwood & Morgan, by Ernest B. Fullwood, for the defendant, appellant.*

HEDRICK, Judge.

Defendant assigns error to the denial of his timely motion for judgments as of nonsuit with respect to the charges of involuntary manslaughter. He contends that the evidence, when considered in the light most favorable to the State, is insufficient to show that the deaths of Serena Merritt, Emily Merritt, and Martha Merritt were proximately caused by the culpable negligence of the defendant.

"The violation of a statute or ordinance, intended and designed to prevent injury to persons or property, whether done intentionally or otherwise, is negligence *per se*, and renders one civilly liable in damages, if its violation proximately result in injury to another. . . . Culpable negligence in the law of crimes is something more than actionable negligence in the law of torts." *State v. Cope*, 204 N.C. 28, 30, 167 S.E. 456, 458 (1933).

The violation of a safety statute which results in injury or death will constitute culpable negligence if the violation is wilful, wanton, or intentional. But, where there is an unintentional or inadvertent violation of the statute, such violation standing alone does not constitute culpable negligence. The inadvertent or unintentional violation of the statute must be accompanied by recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable prevision, amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others.

*State v. Hancock*, 248 N.C. 432, 435, 103 S.E. 2d 491, 494 (1958).

N.C. Gen. Stat. Sec. 20-161(a), (b) and (c) provides:

(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled portion of any highway or highway bridge outside municipal corporate limits unless the vehicle is disabled to such an extent that it is impossible to avoid stopping and temporarily leaving the vehicle upon the paved or main-traveled portion of the highway or highway bridge.

(b) No person shall park or leave standing any vehicle upon the shoulder of a public highway outside municipal corporate limits unless the vehicle can be clearly seen by approaching drivers from a distance of 200 feet in both directions and does not obstruct the normal movement of traffic.

(c) The operator of any truck, trailer or semitrailer which is disabled upon any portion of the highway shall display warning signals not less than 200 feet in the front and rear of the vehicle. During daylight hours, such warning signals shall consist of red flags. During hours of darkness, such warning

signals shall consist of red flares or reflectors of a type approved by the Commissioner of Motor Vehicles. Such warning signals shall be displayed as long as the vehicle is disabled.

N.C. Gen. Stat. Sec. 20-134 in pertinent part provides:

Whenever a vehicle is parked or stopped upon a highway, whether attended or unattended during the times mentioned in Sec. 20-129, there shall be displayed upon such vehicle one or more lamps projecting a white or amber light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, and projecting a red light visible under like conditions from a distance of five hundred feet to the rear. . . .

N.C. Gen. Stat. Sec. 20-129(a) and (d) provides:

(a) When Vehicles Must Be Equipped.—Every vehicle upon a highway within this State during the period from a half hour after sunset to a half hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of 400 feet ahead, shall be equipped with lighted headlamps and rear lamps as in this section respectively required for different classes of vehicles, and subject to exemption with reference to lights on parked vehicles as declared in G.S. 20-134.

(d) Rear Lamps.—Every motor vehicle, and every trailer or semitrailer attached to a motor vehicle and every vehicle which is being drawn at the end of a combination of vehicles, shall have all originally equipped rear lamps or the equivalent in good working order, which lamps shall exhibit a red light plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of such vehicle. One rear lamp or a separate lamp shall be so constructed and placed that the number plate carried on the rear of such vehicle shall under like conditions be illuminated by a white light as to be read from a distance of 50 feet to the rear of such vehicle. Every trailer or semitrailer shall carry at the rear, in addition to the originally equipped lamps, a red reflector of the type which has been approved by the Commissioner and which is so located as to height and is so main-

tained as to be visible for at least 500 feet when opposed by a motor vehicle displaying lawful undimmed lights at night on an unlighted highway. . . .

While the evidence, considered in the light most favorable to the State, is sufficient to raise an inference that the defendant was negligent in that he violated N.C. Gen. Stat. Secs. 20-161(a), (b), (c), 20-134, and 20-129(a) and (d), and that such negligence was a proximate cause of the deaths of Serena Merritt, Emily Merritt, and Martha Merritt, it is our opinion that the evidence is insufficient to raise an inference that such acts and omissions on the part of the defendant manifest a "wilful," "wanton" or "intentional" violation of the statutes, or a "heedless" and "thoughtless" indifference to the safety of others. We hold therefore that the trial judge erred in submitting the cases of involuntary manslaughter to the jury and his orders denying the motions as of nonsuit are reversed and the judgments entered on the verdicts must be vacated.

Although the defendant gave notice of appeal from the judgment imposed in the case wherein he was charged with a violation of N.C. Gen. Stat. Sec. 20-28(a), driving in violation of his limited driving privilege, he has not brought forward any assignments of error relating thereto; since the sentence imposed in this case exceeds that provided for in N.C. Gen. Stat. Sec. 20-179(b), however, the cause must be remanded to the Superior Court for resentencing for the offense of driving in violation of his limited driving privilege.

The result is: in the three cases charging involuntary manslaughter the sentences are vacated. In the case charging driving in violation of his limited driving privilege, we find no error in the trial, but the judgment is vacated and the cause is remanded for resentencing.

Judges BRASWELL and EAGLES concur.